UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

**OCALA DIVISION**


PIERRE FRANCOIS,

Plaintiff,

v.                                              Case No. 5:24-cv-193-JSM-PRL

TNC (US) HOLDINGS, INC.

Defendant.

_____/


## <u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

COMES NOW, Plaintiff, Pierre Francois, by and through the undersigned Counsel and files this First Amended Complaint against TNC (US) Holdings, Inc., Defendant herein, and alleges as follows:

## <u>PARTIES</u>

1.    Plaintiff, Pierre Francois (hereinafter "Plaintiff"), is an individual and, at all times relevant, resided in the State of Florida.

2.      Defendant, TNC (US) Holdings, Inc., is an entity, who at all

times relevant, was conducting business in Orange County,

Florida.

3.      The Defendant in this matter, TNC (US) Holdings, Inc.,

(hereinafter "Defendant"), operated a business in Orlando,

Florida, where it employed the Plaintiff. All matters

complained about herein occurred in Orange County, Florida.

## JURISDICTIONAL STATEMENT

4.      The amount in controversy is greater than $75,000.00,

excluding interests, costs, and attorney's fees, which is in the

jurisdiction of the court in accordance with 28 U.S.C. §1332(a).

## VENUE

5.      Venue is most proper in the United States District Court for the

Middle District of Florida which encompasses Lake County in

the Ocala Division, pursuant to M.D. Fla. L. R. 1.04(a)., because

the negligence and unlawful act(s) of discrimination in

violation of the Florida Civil Rights Act of 1992 giving rise to this action is most directly connected in this county.

## FACTS IN SUPPORT OF CLAIM

6.     On or about, <u>October 17, 2016</u>, Plaintiff began working for Defendant as a Field Representative.

7.     At all times relevant, Plaintiff was an employee of the Defendant.

8.     During said employment the Plaintiff was forced to work in a hostile work environment, and succumb to discrimination, and harassment, at the hands of the Defendants, clients, management, and staff.

9.     At all times relevant, Plaintiff was acting within the scope of his employment.

10.     The Plaintiff has exhausted all administrative remedies prior to filing this Complaint.

11.     Consequently, the Plaintiff was issued a "Notice of Right to Sue" from the EEOC.

12.     Based upon that notice, this action is timely as it has been

commenced within ninety (90) days of Plaintiff s receipt of the

"Notice of Right to Sue."

## COUNT I: NEGLIGENCE

13.     Paragraphs 1 through 12 of the Complaint are incorporated as

if fully set out herein.

14.     At all times relevant Plaintiff was acting in a reasonable and

prudent manner.

15.     It was the duty of Defendant, to protect its employees from a

hostile work environment, discrimination, and harassment,

during the course of their employment.

16.     On June 9, 2022, during Global Impact Day, Team Lead Susan

Hill physically touched plaintiff's person with dirt on her

hands and arms whilst commenting on plaintiff's level of

blackness. She stated "Look how dirty I am, I'm almost as

black as you" while simultaneously touching and gesturing her

arm above, next to, and around the plaintiff's person.

17.     Furthermore, the Plaintiff's manager, Paul Evans, admitted
        that he gaffed off complaints of racial discrimination proffered
        by another employee, during a team meeting, and therefore,
        the Defendant knew or should have known of the hostile work
        environment, and racial discrimination, and harassment,
        suffered by their black employees, including the Plaintiff.

18.     In fact, the Defendant denied all plausible complaints of
        discrimination, despite the display of confederate flags,
        unprovoked calls to the police, and the frequent use of calling
        employees, including the Plaintiff, a "nigger."

19.     On November 14, 2022, plaintiff sent a video and letter
        Complaint via email to Orlando LPM Market Manager Dan
        Wood, to inform them of al the racial hostility in the work
        environment.

20.     On November 15, 2022, plaintiff had a Google video conference
        with Donna Brogdon, (Senior Partner, People Experience).
        Plaintiff discussed racialized experiences of hostile work
        environments including; police reported incident of Nielsen

HH who had vehicle vandalized with "Nigger Lover" written in permanent marker.

21.    On <u>November 16, 2022</u>, plaintiff had a Google video conference with Donna Brogdon, (Senior Partner, People Experience). Plaintiff reviewed more racialized experiences of hostile work environments and harassment including; video and subsequent police reported experience of plaintiff being trapped in elevator and ordered out of the building by security while trying to perform scheduled appointment.

22.    On <u>November 18, 2022</u>, plaintiff had a Google video conference with Donna Brogdon, (Senior Partner, People Experience). Plaintiff explained further racially hostile work environments, including; text messages where plaintiff is being instructed when "It's safe" to approach the home to perform work and where / how to position car so that a racist boyfriend who would probably harm plaintiff if he was spotted at the home would not see him. Nielsen HH warned plaintiff that the man was a gun owner and that this caution was necessary.

23.    On <u>August 2, 2022</u>, plaintiff received an email from then Southeast Sample Manager - Ron DiCicco making light of police involvement stating "… I'm guessing since she wants to call the police on us, she won't be doing a sched or interim:)…".

24.    Defendant owed a duty to Plaintiff to maintain and provide a safe, and non-hostile, work environment that was free from violence, racial discrimination, harassment, the threats of violence, and to obey all Florida laws and regulations.

25.    Defendant breached their duty and is negligent in one or more of the following ways:

- Failing to protect its employees from a hostile work environment, discrimination, and harassment, during the course of their employment;

- Failing to keep employees from psychologically, emotionally, and verbally attacking the Plaintiff;

- Failing to maintain control of its employees;

- Failing to terminate the employment of employees who discriminate against, and harass other employees;

- Failing to terminate the employment of employees who create a hostile work environment.

26.    As a direct and proximate result of the negligence of Defendant; Plaintiff suffered loss of employment, mental anguish, aggravation of an existing condition, expenses of treatment, loss of ability to enjoy and lead a normal life, and other compensatory damages. The losses are either permanent or continuing and Plaintiff will suffer from them in the future. All of the above damages were directly and proximately caused by the aforementioned negligence of Defendant, such that they are liable and were incurred without contributory negligence or assumption of the risk on the part of Plaintiff.

27.    Wherefore, Plaintiff demands judgment for damages which are in excess of the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of costs, interest and attorney's fees.

## COUNT II: DISPARATE TREATMENT BASED UPON RACE IN VIOLATION OF CHAPTER 760 OF THE FLORIDA STATUTES

28. Paragraphs 1 through 27 of the Complaint are incorporated as if fully set out herein.

29. Defendant required Plaintiff to perform job duties that were outside of his work restrictions, and was forced to succumb to discrimination, harassment, and a hostile work environment.

30. On June 8, 2020, Plaintiff reported several incidents of harassment and hostile work environments via video conference meeting with majority of the Orlando LPM. Attendees included but were not limited to; Marcos Pagan, Erwin Vasques, Michael Harris, Marcos Pagan, Erwin Vasques., Anita Morton., Tim Crum., Alex Ceballos., Patrick Walters., Victor Arencibia.

31. The complaints on June 8, 2020, included instances such as; Nielsen HH stating, "There's a difference between Niggers and black people and you know what Pierre, you're a good guy." Plaintiff's Co-worker Anita Morton, added several experiences where plaintiff was involved in hostile work environments,

including Nielsen HH referring to defendant as a "coon ass". Plaintiff's Co-worker Marcos Pagan shed tears as he shared instances of hate speech made by Nielsen HHs about black people.

32.    The discrimination, harassment, and hostile work environment that the Plaintiff was forced to succumb to drastically and negatively affected the Plaintiff's physical and mental health, even after the Plaintiff had reported the aforementioned harassment and discriminatory treatment to the Defendant, to the extent that the Plaintiff passed out while driving on two separate occasions, and weight loss in excess of twenty-two pounds.

33.    On June 9, 2022, during Global Impact Day, Team Lead Susan Hill physically touched plaintiff's person with dirt on her hands and arms whilst commenting on plaintiff's level of blackness. She stated "Look how dirty I am, I'm almost as black as you" while simultaneously touching and gesturing her arm above, next to, and around the plaintiff's person.

34.   Furthermore, the Plaintiff's manager, Paul Evans, admitted that he gaffed off complaints of racial discrimination proffered by another employee, during a team meeting, and therefore, the Defendant knew or should have known of the hostile work environment, and racial discrimination, and harassment, suffered by their black employees, including the Plaintiff.

35.   In fact, the Defendant denied all plausible complaints of discrimination, despite the display of confederate flags, unprovoked calls to the police, and the frequent use of calling employees, including the Plaintiff, a "nigger."

36.   On November 14, 2022, plaintiff sent a video and letter Complaint via email to Orlando LPM Market Manager Dan Wood, to inform them of al the racial hostility in the work environment.

37.   On November 15, 2022, plaintiff had a Google video conference with Donna Brogdon, (Senior Partner, People Experience). Plaintiff discussed racialized experiences of hostile work environments including; police reported incident of Nielsen

HH who had vehicle vandalized with "Nigger Lover" written in permanent marker.

38.    On <u>November 16, 2022</u>, plaintiff had a Google video conference with Donna Brogdon, (Senior Partner, People Experience). Plaintiff reviewed more racialized experiences of hostile work environments and harassment including; video and subsequent police reported experience of plaintiff being trapped in elevator and ordered out of the building by security while trying to perform scheduled appointment.

39.    On <u>November 18, 2022</u>, plaintiff had a Google video conference with Donna Brogdon, (Senior Partner, People Experience). Plaintiff explained further racially hostile work environments, including; text messages where plaintiff is being instructed when "It's safe" to approach the home to perform work and where / how to position car so that a racist boyfriend who would probably harm plaintiff if he was spotted at the home would not see him. Nielsen HH warned plaintiff that the man was a gun owner and that this caution was necessary.

40.    The Plaintiff is qualified to perform his assigned or prospective

job duties as a field representative and had continued to

perform said duties until he was diagnosed with F33.1 –

MAJOR DEPRESS DISORDER – RECURRENT MOD, F43.22 –

ADJUSTMENT DISORDER WITH ANXIETY, and F41.1 –

GENERALIZED ANXIETY DISORDER, and forced to take a

leave of absence.

41.    Plaintiff has been discriminated against because of his

diagnosis, despite the fact that the Defendant failed to take the

necessary parameters to protect the Plaintiff from further

discrimination, harassment, and hostility in the workplace.

42.    On April 25, 2023, upon returning to work, Donna Brogdon,

(Senior Partner, People Experience) instructed to plaintiff to

contact Orlando FM (Dan Wood) "by the end of the day" with

no other communication regarding his concerns. Plaintiff

reached out to Dan as instructed and during the exchange

asked if there were any updates regarding his complaints and

concerns. Dan responded by stating, "what do you mean? I

thought that was taken care of." Mr. Wood explained the

expectation was for him to be "up and running as quickly as possible" and returning to the same conditions with no acknowledgement of complaints.

43.    Persons similarly situated to, and outside of the Plaintiff's protected class, did not have to endure such discriminatory actions, and harassment, nor were they forced to endure the same hostility in the workplace.

44.    Plaintiff suffered an adverse employment action, to wit, he was forced to resign from his employment under threats of violence. See, *Boyle v. City of Pell City*, 866 F.3d 1280 (Court of Appeals, 11th Cir. 2017) (Holding "Under the constructive-discharge doctrine, "an employee may be deemed to have been discharged where the terms or conditions of employment under which [he] is asked to work are so intolerable that a reasonable person in [his] position would have been compelled to resign."").

## <u>COUNT III: VICARIOUS LIABILITY OF DEFENDANT</u>

45.     Paragraphs 1 through 44 of the Complaint are incorporated as if fully set out herein.

46.     Defendant is vicariously liable for the negligence of Donna Brogdon and Dan Wood, as described in Count I of this Complaint, pursuant to the doctrine of Respondeat Superior. See, *Hicks v. Kemp*, 79 So.2d 696 (Fla. 1955) (holding: "Although a master is not an insurer of his servant's safety, he has a positive duty to provide his servant with reasonably safe instrumentalities and places to work. This is a common law doctrine which is based upon the rule of respondeat superior.").

47.     Defendant is also vicariously liable for the physical, mental, and emotional anguish, suffered by the Plaintiff, because even though it knew or should have known of the discrimination, harassment, and hostile work environment, the Plaintiff was forced to succumb to, it took no action to stop such conduct, or mitigate the effects thereof as described in Count II of this Complaint.

48.    Wherefore, Plaintiff demands judgment for damages which are in excess of the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of costs, interest and attorney's fees.

## **PRAYER FOR RELIEF**

Plaintiff requests that he be entitled to the following as a result of the conduct of Defendant:

a)    Compensatory damages related to expenses and other costs incurred in the past and future;

b)    Damages for pain and suffering;

c)    Loss of wages;

d)    Prejudgment interest;

e)    Treble damages;

f)    Attorney's fees;

h)    Award of costs incurred herein; and

i)    Such other and further relief as this Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff, hereby makes a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

THE WASHINGTON TRIAL GROUP, PLLC

**/s/ Ka'Juel Washington**
By:_____
    KA'JUEL J. WASHINGTON, ESQ.
    Florida Bar No. 22125
    37 N. Orange Ave., Suite 500
    Orlando, Florida 32801
    Tel. (407) 606-5715
    Fax: (407) 236-0430

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of May 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

**/s/ Ka'Juel J. Washington**
By:_____
    KA'JUEL J. WASHINGTON
    Florida Bar No. 22125